IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

RUPHARD HUGH MARTIN, JR.,

                *Plaintiff*

   v.

SOUTHERN PREMIER CONTRACTORS, INC.,

                *Defendant*

Civil Action File No. `2:11-CV-0197-WCO`

## COMPLAINT FOR DAMAGES

Plaintiff Ruphard Hugh Martin, Jr. files this Complaint against Southern Premier Contractors, Inc., his former employer, pursuant to the provisions of the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et seq*., showing the Court as follows:

### Jurisdiction and Venue

1. The Court has subject matter jurisdiction over Martin's FLSA claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

2. Southern Premier may be served pursuant to Federal Rule of Civil Procedure 4(h) by service upon its registered agent in the State of Georgia, Michael Massey.

After service, Southern Premier shall be subject to the *in personam* jurisdiction of this Court.

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because Southern Premier is a corporation that is deemed to reside in this judicial district under 28 U.S.C. § 1391(c) and a substantial part of the events giving rise to Martin's claim against Southern Premier occurred in this district.

4.  Venue in the Gainesville Division of the Northern District of Georgia is proper because all or part of the activity at issue occurred within this division.  LR 3.1 B.(3), NDGa.

## Factual Allegations

5.  Martin was employed by Southern Premier from approximately July 20, 2009, until April 23, 2011.

6.  During such time, Martin was Southern Premier's "employee" as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

7.  At all times relevant, Southern Premier has been a Georgia corporation and has maintained offices and conducted substantial business in Georgia.

8.  Southern Premier is an employer as defined by § 3(d) of the Act, 29 U.S.C. § 203(d).

9.  Southern Premier is subject to and governed by § 7 of the Act, 29 U.S.C. § 207.

10. Throughout Martin's employment, Southern Premier paid Martin a fixed salary for his work.

11. Upon Martin's hiring through approximately December 2009, Southern Premier paid Martin a fixed salary of $240.00 per day.

12. From approximately January 2010 through June 2010, Southern Premier paid Martin a fixed salary of $1200.00 per week. For weekend work, Southern Premier paid Martin an additional fixed salary of $120.00 for each half-day worked and $240.00 per day for each full day worked.

13. From approximately June 2010 through April 23, 2011, the date of his separation from the company,  Southern Premier paid Martin a fixed salary of $1500.00 per week. For weekend work, Southern Premier paid Martin an additional fixed salary of $150.00 for each half-day worked and $300.00 per day for each full day worked.

14. In addition to the fixed salaries identified above, Martin received periodic bonuses from Southern Premier.

15. Southern Premier did not pay Martin an hourly wage at any time during his employment.

16.  During Martin's employment, Southern Premier required or permitted Martin to work overtime, i.e., in excess of 40 hours per week.

17. Southern Premier failed to pay Martin for all overtime worked.

18. From approximately January 1, 2010, until the end of his employment with Southern Premier, Martin maintained a log of his work hours.

19. For the week beginning January 11, 2010, Martin worked a total of 47.5 hours.

20. For the week beginning January 25, 2010, Martin worked a total of 49 hours.

21. For the week beginning February 8, 2010, Martin worked a total of 45.5 hours.

22. For the week beginning February 15, 2010, Martin worked a total of 53 hours.

23. For the week beginning February 22, 2010, Martin worked a total of 68 hours.

24. For the week beginning March 1, 2010, Martin worked a total of 70.25 hours.

25. For the week beginning March 8, 2010, Martin worked a total of 64.75 hours.

26. For the week beginning March 15, 2010, Martin worked a total of 56 hours.

27. For the week beginning March 22, 2010, Martin worked a total of 57.75 hours.

28. For the week beginning March 29, 2010, Martin worked a total of 68.75 hours.

29. For the week beginning April 5, 2010, Martin worked a total of 58.25 hours.

30. For the week beginning April 12, 2010, Martin worked a total of 64 hours.

31. For the week beginning April 19, 2010, Martin worked a total of 60.75 hours.

32. For the week beginning April 26, 2010, Martin worked a total of 64.25 hours.

33. For the week beginning May 3, 2010, Martin worked a total of 61.25 hours.

34. For the week beginning May 17, 2010, Martin worked a total of 41.25 hours.

35. For the week beginning May 24, 2010, Martin worked a total of 49.75 hours.

36. For the week beginning May 31, 2010, Martin worked a total of 52.25 hours.

37. For the week beginning June 7, 2010, Martin worked a total of 52.75 hours.

38. For the week beginning June 14, 2010, Martin worked a total of 57.75 hours.

39. For the week beginning June 21, 2010, Martin worked a total of 60.75 hours.

40. For the week beginning June 28, 2010, Martin worked a total of 65.25 hours.

41. For the week beginning July 5, 2010, Martin worked a total of 47.5 hours.

42. For the week beginning July 12, 2010, Martin worked a total of 71 hours.

43. For the week beginning July 19, 2010, Martin worked a total of 68 hours.

44. For the week beginning July 26, 2010, Martin worked a total of 63 hours.

45. For the week beginning August 2, 2010, Martin worked a total of 68 hours.

46. For the week beginning August 9, 2010, Martin worked a total of 69.5 hours.

47. For the week beginning August 16, 2010, Martin worked a total of 69.5 hours.

48. For the week beginning August 23, 2010, Martin worked a total of 51 hours.

49. For the week beginning August 30, 2010, Martin worked a total of 58.5 hours.

50. For the week beginning September 6, 2010, Martin worked a total of 48 hours.

51. For the week beginning September 13, 2010, Martin worked a total of 43.5 hours.

52. For the week beginning September 20, 2010, Martin worked a total of 60.5 hours.

53. For the week beginning September 27, 2010, Martin worked a total of 41.5 hours.

54. For the week beginning October 4, 2010, Martin worked a total of 45.5 hours.

55. For the week beginning October 11, 2010, Martin worked a total of 49 hours.

56. For the week beginning October 18, 2010, Martin worked a total of 54.5 hours.

57. For the week beginning October 25, 2010, Martin worked a total of 58.5 hours.

58. For the week beginning November 1, 2010, Martin worked a total of 54.5 hours.

59. For the week beginning November 8, 2010, Martin worked a total of 57 hours.

60. For the week beginning November 15, 2010, Martin worked a total of 66 hours.

61. For the week beginning November 22, 2010, Martin worked a total of 67 hours.

62. For the week beginning November 29, 2010, Martin worked a total of 70 hours.

63. For the week beginning December 13, 2010, Martin worked a total of 69.5 hours.

64. For the week beginning December 20, 2010, Martin worked a total of 56.5 hours.

65. For the week beginning December 27, 2010, Martin worked a total of 47 hours.

66. For the week beginning January 3, 2011, Martin worked a total of 74 hours.

67. For the week beginning January 17, 2011, Martin worked a total of 69 hours.

68. For the week beginning January 24, 2011, Martin worked a total of 76 hours.

69. For the week beginning January 31, 2011, Martin worked a total of 55 hours.

70. For the week beginning February 14, 2011, Martin worked a total of 45.5 hours.

71. For the week beginning February 21, 2011, Martin worked a total of 70.5 hours.

72. For the week beginning February 28, 2011, Martin worked a total of 61 hours.

73. For the week beginning March 7, 2011, Martin worked a total of 60 hours.

74. For the week beginning March 14, 2011, Martin worked a total of 60 hours.

75. For the week beginning March 21, 2011, Martin worked a total of 45 hours.

76. For the week beginning March 28, 2011, Martin worked a total of 52.5 hours.

77. For the week beginning April 4, 2011, Martin worked a total of 46 hours.

78. For the week beginning April 11, 2011, Martin worked a total of 48.5 hours.

79. For the week beginning April 11, 2011, Martin worked a total of 48.5 hours.

80. From July 20, 2009, until January 11, 2010, Martin often worked in excess of 40 hours per week but was not paid any overtime.

81. For a portion of Martin's employment, Southern Premier, through its agents and employees, required Martin to record only 40 hours of work per week on the timesheet he provided Southern Premier, even though Martin worked in excess of 40 hours  per week.

82. Under 29 U.S.C. § 211(c) and U.S. Department of Labor Regulations issued in furtherance of that statute, Southern Premier has a duty to maintain and preserve accurate payroll and other employment records.

83. For at least a portion of Martin's employment, Southern Premier did not maintain and preserve accurate payroll and work records and, consequently, did not provide accurate wage statements to Martin.

84. From the date on which Martin began working for Southern Premier through April 18, 2011, Southern Premier misclassified and treated Martin as an exempt, salaried employee under the Act.

85. From the date on which Martin began working for Southern Premier through April 18, 2011, Southern Premier did not pay Martin any overtime wages, even though he often worked more than 40 hours per week and should not have been treated as an "exempt" employee.

86. Martin was not, at any point during his employment with Southern Premier, employed in an executive, administrative, or professional capacity pursuant to 29

U.S.C. § 213(a)(1) and was not subject to any other exemptions contained in the Act or in any regulations interpreting the Act.

## Claim for Relief --Violation of 29 U.S.C. § 207

87. Martin incorporates the preceding paragraphs of this Complaint in this Claim for Relief by reference as if those paragraphs were set forth fully herein.

88. Southern Premier has violated 29 U.S.C. § 207 by failing to pay overtime wages to Martin in an amount equal to one and one-half (1 ½) times his regular rate of pay for all hours worked over 40 in each week.

89. Southern Premier has repeatedly and willfully engaged in a pattern and practice of violating the Act by failing and refusing to pay overtime wages as required by law to its employees, including Martin, who are non-exempt under the Act.

90. Southern Premier has damaged Martin by unlawfully, knowingly and willfully denying overtime wages to them in violation of the Act.

91. Southern Premier has not made a good faith effort to comply with the Act. Blue-collar laborers like Martin are and have generally been considered "non-exempt" employees under the Act.

92. Under the Act, Southern Premier is liable to Martin for his unpaid overtime wages (at the statutory rate), an additional, equal amount as liquidated damages, as

well as for reasonable attorneys' fees, costs, expenses of this action, and applicable pre- and post-judgment interest.

93. Southern Premier's violation of the Act has been "willful," as defined by the Act, and Southern Premier's failure and refusal to comply with the Act constitutes a willful violation of § 7(a), 29 U.S.C. 207(a), for purposes of determining the applicable statute of limitations under 29 U.S.C. § 255(a).

94. Martin is therefore entitled to all such unpaid overtime compensation and an additional, equal amount as liquidated damages for all uncompensated, overtime hours he worked at any time during the three-year period immediately preceding the filing of this lawsuit.

95. As a result of Southern Premier's violations of the Act, Martin has been denied and deprived of overtime compensation in an amount to be determined at trial.  Martin is entitled to recover that amount, liquidated damages, prejudgment interest, attorneys' fees and costs, and all other compensation afforded him by 29 U.S.C. § 216(b).

WHEREFORE, Martin demands judgment and prays that this Court:

1. Award  him actual damages for his unpaid overtime wages, plus an additional, equal amount as liquidated damages, plus pre- and post-judgment interest at the statutory rate, plus attorneys' fees, costs, and disbursements as

provided by 29 U.S.C. § 216(b); and

2. Award him any other legal and equitable relief that the Court deems necessary and just, including but not limited to all relief to which Plaintiff is entitled to under the Act.

This 29th day of July, 2011.

ORR BROWN JOHNSON LLP


Post Office Box 2944                     /s/ Dustin Marlowe_____
Gainesville, Georgia 30503               Dustin Marlowe (Ga. Bar No. 773538)
770-534-1980                             E. Wycliffe Orr, Sr. (Ga. Bar No. 554500)
770-536-5910 (facsimile)                 Kristine Orr Brown (Ga. Bar No. 554630)
dmarlowe@orrbrownjohnson.com
eworr@orrbrownjohnson.com
kbrown@orrbrownjohnson.com               ATTORNEYS FOR PLAINTIFF