**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

RUPHARD HUGH MARTIN, JR.,    :
                                   :
        Plaintiff,            :
                                   :
        v.                :      CIVIL ACTION NO.
                                   :      2:11-CV-00197-RWS
SOUTHERN PREMIER           :
CONTRACTORS, INC.,           :
                                   :
        Defendant.        :

## <u>ORDER</u>

This case comes before the Court on Defendant Southern Premier

Contractors, Inc.'s Motion for Summary Judgment [32]. After reviewing the

record, the Court enters the following Order.

## Background

Plaintiff Ruphard Hugh Martin, Jr. ("Plaintiff") brought this action for

unpaid overtime compensation under the Fair Labor Standards Act of 1938

("FLSA"), which requires that employers pay their employees overtime

compensation at a rate not less than time and a half for hours worked in excess

of a forty-hour workweek. 29 U.S.C. § 207(a)(1). This requirement, however,

does not apply with respect to any employee "employed in a bona fide

executive . . . capacity."  29 U.S.C. § 213(a)(1).  Defendant Southern Premier

Contractors, Inc. ("Defendant" or "SPC") now moves for summary judgment on

Plaintiff's overtime claim on the basis of this executive exemption.  (See

generally Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem."),

Dkt. [32-1].)  The nature of Plaintiff's employment with SPC is, therefore, the

key issue in this case.[1]

## I.       General Background on SPC and Plaintiff's Employment

SPC is a utility contractor in the primary business of repairing and

replacing pipes for Gwinnett County.  (Def.'s Statement of Material Facts

About Which There Is No Genuine Issue To Be Tried ("Def.'s SMF"), Dkt.

[32-2] ¶ 1.)  It commenced operations in May 2009 and has two departments, a

civil department and a CCTV department, the latter of which was created in

September or October 2010.  (Id. ¶¶ 1, 6; Pl.'s Resp. to Def.'s SMF, Dkt. [37-6]

¶ 6.)  Plaintiff was hired by SPC as a full-time employee in July 2009 and from

July 2009 until September or October 2010 worked on SPC's civil crew, which

---

[1] SPC also argues that it was not covered by the FLSA, and therefore not
subject to its overtime compensation requirement, "until the end of the first quarter of
2010 because its annualized revenue was less than $500,000 until that point."  (Def.'s
Mem., Dkt. [32-1] at 2, 5-7 (citing 29 U.S.C. § 203(s)(1)(A).)  This argument is
addressed in Part II.A. of the Discussion section, infra.

repaired underground stormwater pipes.  (Decl. of Ruphard Hugh Martin, Jr. ("Pl.'s Decl."), Dkt. [37-1] ¶¶ 2-3.)  From September or October 2010, when the CCTV department was established, until the end of Plaintiff's employment, Plaintiff worked primarily in SPC's CCTV department, which department primarily cleaned underground stormwater pipes and inspected them by video. (Id. ¶¶ 6-7.)  SPC paid Plaintiff $240 per day at the outset of his employment but started paying him on a salary basis around the first of 2010.  (Def.'s SMF, Dkt. [32-2] ¶ 8.)  In June 2010, Plaintiff's salary was increased from $1,200 per week to $1,500 per week.  (Id. ¶ 9.)  SPC contends that Plaintiff was the highest paid employee other than the company's two owners, Michael Massey ("Massey") and Lisa Massey.[2]

---

[2] Plaintiff disputes this assertion on grounds that "SPC has failed to provide the Court with evidence of the extent to which [Plaintiff]'s compensation allegedly outpaced his coworkers' wages when, for example, the other workers' paid overtime hours are considered."  (Pl.'s Resp. to Def.'s SMF, Dkt. [37-6] ¶ 10.)  In support of this factual assertion, Defendant points to Massey's deposition, in which he testified that other than himself and SPC's other owner, Lisa Massey, Plaintiff was the highest compensated SPC employee.  (June 7, 2012 Dep. of Michael Massey ("Massey Dep."), Dkt. [33-3] at 48:24-49:9.)

3

II.     **The Nature of Plaintiff's Employment**

The Parties hotly dispute the nature of Plaintiff's employment.  As stated above, SPC contends that Plaintiff is subject to the executive exemption of the FLSA and, thus, argues that Plaintiff was employed in an executive capacity, with his primary duties being the management of SPC's departments and supervision of its employees.  (See generally Def.'s Mem., Dkt. [32-1].) Plaintiff contends, on the other hand, that he does not fall within the executive exemption of the FLSA because he was, essentially, an "ordinary laborer," with the overwhelming majority of his work consisting of hard manual labor and non-managerial tasks.  (See generally Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp."), Dkt. [37].)

A.     Defendant's Account of Plaintiff's Responsibilities

The following is a summary of the evidence presented by SPC in support of its argument that Plaintiff was employed in an executive capacity.  SPC contends that Plaintiff was a foreman for SPC, first in the civil and later in the CCTV department.  (Aff. of Michael Massey ("Massey Aff."), Dkt. [32-6] ¶ 3.) With respect to his work in the civil department, SPC contends that Plaintiff "watched over the job" when Massey was not present, "did supervising work,"

4

and "told [employees] what to do once [they] got to the job."  (Def.'s SMF,

Dkt. [32-2] ¶¶ 11-12.)  SPC contends that Plaintiff subsequently "took over" or

"r[an]" the CCTV department and, in that capacity, participated in the process

of hiring other employees, made hiring recommendations, trained employees,

scheduled the work the CCTV department would perform, made staffing

decisions, and decided what materials would be required to complete a job.  (Id.

¶¶ 13-22.)  It is undisputed that Plaintiff "was responsible for the work

performed by all employees in the CCTV department."  (Id. ¶ 17.)  It is also

undisputed that Plaintiff prepared daily reports for SPC and that Plaintiff was

the only employee who prepared these reports from January 2010 to July 2011,

when another employee, Kelton Peels ("Peels"), also gained this authority.

(Id. ¶ 33.)

       SPC also contends that as a "manager" for SPC, Plaintiff was responsible

for supervising employees and ensuring that work was completed properly and

on time.  (Id. ¶¶ 23-32.)  For example, SPC contends that between four and

eight employees reported to Plaintiff at all times, and that Plaintiff would

instruct employees on how to perform work tasks.  (Id. ¶¶ 24, 26-30.)  It is

undisputed that Plaintiff "had primary responsibility to make sure that work was

5

performed in a safe manner."  (Id. ¶ 42.)  To this end, SPC contends that

Plaintiff had the authority to correct employees who were working in an unsafe

manner and that Plaintiff did, in fact, reprimand employees for incorrect work

performance, either directly or indirectly to Massey.  (Id. ¶ 43.)  Indeed,

Plaintiff admits that he reprimanded employees for "equipment-related issues."

(Pl.'s Resp. to Def.'s SMF, Dkt. [37-6] ¶ 43.)

Massey summarized Plaintiff's employment position as follows:

As a foreman, [Plaintiff]'s principal value to SPC was that
he was able to manage work projects from start to finish.  It was
easier to find employees to perform manual labor than it was to
find employees like [Plaintiff] who could supervise work projects
and make sure that work was done in a prompt, correct, and safe
manner.  SPC paid [Plaintiff] more than any other employee (other
than me and my wife Lisa, who is a co-owner of SPC) because of
his value as a supervisor.

Because of his role supervising the civil and then the CCTV
departments, I gave particular weight to [Plaintiff]'s
recommendations for hiring and firing employees.  If an
interviewee or an employee could not co-exist with [Plaintiff], then
it did not make sense for that person to be working with [Plaintiff].
Accordingly, I placed great importance on [Plaintiff]'s input
regarding hiring and firing.  In fact, I cannot recall an instance
where I did not act in accordance with his recommendations
regarding hiring and firing.

(Massey Aff., Dkt. [32-6] ¶¶ 4-5.)

6

B.      Plaintiff's Account of His Employment Responsibilities

As stated above, Plaintiff vigorously disputes SPC's contention that

Plaintiff was employed in an executive or managerial capacity and contends, on

the contrary, that he was an ordinary laborer whose work consisted primarily of

hard manual labor and non-managerial tasks.  (See generally Pl.'s Resp. to

Def.'s Mot. for Summ. J., Dkt. [37].)  Plaintiff's argument in this regard

essentially boils down to his contention that "virtually all management-level

decisions regarding SPC's business were made by [Massey], not [Plaintiff]."

(Id. at 7.)  In support of this argument, Plaintiff offers the following evidence.[3]

From July 2009 through September or October 2010, while Plaintiff

worked in the civil department, "Plaintiff spent approximately ninety-five

percent of his work time landscaping, performing construction work, operating

tractors and backhoes, driving trucks, and repairing stormwater pipes."  (Pl.'s

Statement of Additional Material Facts Presenting a Genuine Issue for Trial

("Pl.'s SAF"), Dkt. [37-7] ¶ 1.)  Plaintiff explains that this work included

"hauling gravel and other materials by dumptruck, operating backhoes and

_____

[3] Again, the Court provides a summary of the evidence provided by Plaintiff
and does not attempt to catalog each piece of Plaintiff's evidence.

7

trackhoes, running tractors, shoveling dirt, spreading straw, and laying sod."
(Decl. of Ruphard Hugh Martin, Jr. ("Pl.'s Decl."), Dkt. [37-1] ¶ 4.)  Plaintiff
also was tasked with completing daily reports, which task took Plaintiff
approximately five to ten minutes at the end of each work day.  (Id.)

It is undisputed that while Plaintiff was working with the civil crew,
Massey was on the same job site as Plaintiff approximately ninety to ninety-five
percent of the time.  (Pl.'s SAF, Dkt. [37-7] ¶ 9.)  While Plaintiff admittedly
"watched over the job," he did so only in Massey's absence and while, at the
same time, doing the same work as other employees.  (Pl.'s Resp. to Def.'s
SMF, Dkt. [37-6] ¶ 11.)  Plaintiff contends that he only supervised employees
in Massey's absence and that any directions he provided to employees or other
workers on job sites came directly from Massey.  (Id. ¶ 12; Pl.'s SAF, Dkt. [37-
7] ¶¶ 19-20.)  Plaintiff contends that Massey, not Plaintiff, directed work on
SPC's civil job sites and that Massey, not Plaintiff, decided whether to purchase
materials for a job site; decided or approved changes in work orders; and was
responsible for project billing.  (Pl.'s SAF, Dkt. [37-7] ¶¶ 11-14.)  If a problem
arose on a civil job site and Massey was not there, Plaintiff would call Massey

8

to see what Massey wanted to be done.  (Id. ¶ 18.)  If Massey left a job site, he would tell Plaintiff and other employees what to do before he left.  (Id. ¶ 17.)

After Plaintiff moved primarily to the CCTV department, he spent "at least eighty percent of his work time performing non-managerial labor: cleaning pipes, placing the camera (which weighs approximately one hundred pounds and must be carefully lowered into the pipe), and remotely controlling the camera."  (Pl.'s Decl., Dkt. [37-1] ¶ 8.)  Plaintiff disputes SPC's contentions that Plaintiff generally supervised the CCTV department and actively participated in the hiring of employees.  (Pl.'s Resp. to Def.'s SMF, Dkt. [37-6] ¶¶ 13-16, 18.)  First, Plaintiff contends that many managerial decisions were made by Massey rather than Plaintiff.  (Id. ¶ 13.)  In particular, although Massey tasked Plaintiff with preparing a preliminary schedule for the video work, Massey ultimately decided the order in which video jobs would be completed.  (Id.; see also Pl.'s SAF, Dkt. [37-7] ¶ 28 ("Once drafted, [Plaintiff] would email the schedule to Massey, who would either approve it or revise it.").)  Plaintiff also contends that after the CCTV crew completed its scheduled jobs, Massey, not Plaintiff, decided whether the CCTV crew would quit for the day or go assist the civil crew.  (Pl.'s Resp. to Def.'s SMF, Dkt. [37-6] ¶ 13;

9

Pl.'s SAF, Dkt. [37-7] ¶ 29.)  Plaintiff also contends that if the CCTV crew

came across a "particularly gnarly pipe," Plaintiff called Massey for instruction

on whether to clean the pipe with the jet truck or clean the pipe by hand.  (Pl.'s

Resp. to Def.'s SMF, Dkt. [37-6] ¶ 13; Pl.'s SAF; Dkt. [37-7] ¶ 29.)

Second, Plaintiff points out that he never hired or fired anyone while

working for SPC and that neither Massey nor Lisa Massey ever told Plaintiff he

had authority to do so.  (Pl.'s SAF, Dkt. [37-7] ¶ 7.)  Indeed, Plaintiff denies

SPC's assertion that he participated in the process of interviewing employees.

(Pl.'s Resp. to Def.'s SMF, Dkt. [37-6] ¶ 14.)  Nor does Plaintiff recall ever

recommending that anyone be hired.  (Id.)  Plaintiff contends that he merely

responded to Massey's questions about how probationary employees were

performing.  (Id. ¶ 16.)  Plaintiff never adjusted or set any employee's rate of

pay or hours while employed by SPC.  (Pl.'s SAF, Dkt. [37-7] ¶ 8.)  Plaintiff

gave no input regarding SPC's budget and had no responsibility to monitor its

legal compliance.  (Id.)

The Court sets out the legal standard governing a motion for summary

judgment before considering SPC's motion on the merits.  The Court first

considers Defendant's argument that it was not covered by the FLSA until the

10

end of the first quarter of 2010.  The Court then considers Defendant's

argument that it was not obligated to pay Plaintiff overtime compensation, in

any event, because Plaintiff fell within the executive exemption of the FLSA.

## Discussion

**I.      Summary Judgment Legal Standard**

Federal Rule of Civil Procedure 56 requires that summary judgment be

granted "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  "The moving party bears 'the initial responsibility of informing the . . .

court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue

of material fact.'"  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259

(11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)

(internal quotations omitted)).  Where the moving party makes such a showing,

the burden shifts to the non-movant, who must go beyond the pleadings and

present affirmative evidence to show that a genuine issue of material fact does

exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the Court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

12

II.    **Analysis**

     A.     <u>Enterprise Coverage under the FLSA</u>

SPC first argues that it was not covered by the FLSA until the beginning of the second quarter of 2010 because it's annualized revenue was less than $500,000 prior to this point.  (Def.'s Mem., Dkt. [32-1] at 5-7.)  On this basis, SPC seeks summary judgment on Plaintiff's claim for overtime compensation for hours worked prior to April 1, 2010.  (<u>Id.</u>)

Enterprise coverage under the FLSA does not exist unless the business's "annual gross volume of sales made or business done is not less than $500,000."  29 U.S.C. § 203(s)(1)(A)(ii).  The governing regulations recognize that in the case of a new business, the employer will be unable to compute its annual dollar volume on the basis of a twelve-month period.  29 C.F.R. § 779.269.  The regulations also recognize, however, that in many cases, it will be "readily apparent that the enterprise or establishment will or will not have the requisite annual dollar volume specified in the Act."  29 C.F.R. § 779.269.  The regulations give as an example a large department store or supermarket, where "it may be clear from the outset that the business will meet the annual dollar

volume tests so as to be subject to the requirements of the Act."  29 C.F.R. § 779.269.

In cases where it is not clear, the regulations provide that "the gross receipts of the new business during the first quarter year in which it has been in operation will be taken as representative of its annual dollar volume . . . for purposes of determining its obligations under the Act in workweeks falling in the following quarter year period."  29 C.F.R. § 779.269.  "Similarly, for purposes of determining its obligations under the Act in workweeks falling within ensuing quarter year periods, the gross receipts of the new business for the completed quarter year periods will be taken as representative of its annual dollar volume in applying the annual volume tests of the Act."  29 C.F.R. § 779.269 (emphasis added).

SPC has submitted evidence, which Plaintiff does not dispute, that its gross sales in its first three quarters of operation were as follows:

- 2009 quarter 2 (its first quarter of operation): $47,092

- 2009 quarter 3: $109,043

- 2009 quarter 4: $216,837

(Def.'s SMF, Dkt. [32-2] ¶¶ 1-4; Pl.'s Resp. to Def.'s SMF, Dkt. [37-6] ¶¶ 1-4.)

14

SPC thus contends that, using the "look-back method" set out in 29 C.F.R. §
779.269 for new businesses, its annualized gross sales volume did not reach
$500,00 until the second quarter of 2010.  (Def.'s Mem., Dkt. [32-1] at 6-7.)  In
its response brief, Plaintiff does not dispute SPC's calculations in this regard.
(Pl.'s Resp., Dkt. [37] at 20-21.)

Plaintiff nonetheless contends that SPC has failed to prove, as a matter of
law, that SPC was not subject to enterprise coverage under the FLSA until the
second quarter of 2010.  (Pl.'s Resp., Dkt. [37] at 20-21.)  To this end, Plaintiff
contends that it was "clear from the outset that [SPC] [would] satisfy the annual
dollar volume test by the end of its first year of business."  (Id. at 20 (citing 29
C.F.R. § 779.269).)  In support of this argument, Plaintiff points to Massey's
deposition testimony, in which he stated that SPC had paid each of its non-
managerial employees overtime since SPC had been in business:

> Q.      . . . When do you contend that Southern Premier Contractors
>         became subject to the [FLSA]?
>
> A.      [SPC], we abide by the [FLSA], always have.
>
> Q.      Okay.
>
> A.      But management people are exempt. [Plaintiff] was in a
>         management position.

15

> Q.      . . . Does that mean you paid all non-management employees overtime since [SPC]'s been in business?
>
> A.      To my knowledge, yes.

(Id. at 20-21 (quoting Massey Dep., Dkt. [34] at 129:5-19).)[4]

The Court agrees with Plaintiff that issues of fact preclude the Court from ruling as a matter of law that SPC was not subject to the FLSA until the second quarter of 2010.  As stated above, the regulations recognize that "[i]n many cases it is readily apparent that the enterprise or establishment will or will not have the requisite annual dollar volume specified in the Act" and list as examples "a large department store" or "a supermarket."  29 C.F.R. § 779.269.  Although SPC argues that it does not fall within this language because it is not "a large department store, or a supermarket," these are merely examples of enterprises that clearly are covered by the Act, and there is no evidence in the record from which the Court may decide, as a matter of law, that SPC is not

---

[4] Plaintiff also points to the fact that SPC grossed nearly four times the amount needed to establish coverage under the FLSA in its first year.  (Pl.'s Resp., Dkt. [37] at 21 (citing Massey Dep., Dkt. [34] at 120-21).)  Indeed, Massey testified that in its first year of business, SPC grossed between 1.9 and 2 million dollars in income. (Massey Dep., Dkt. [34] at 120:22-121:6.)

16

such an enterprise.  Accordingly, SPC is not entitled to summary judgment on this issue.

> B.    Executive Exemption of the FLSA

As stated in the Background section, <u>supra</u>, SPC moves for summary judgment on Plaintiff's overtime claim on the basis of the FLSA's executive exemption.  This exemption provides that the FLSA's overtime compensation requirement does not apply to "any employee employed in a bona fide executive . . . capacity . . . ."  29 U.S.C. § 213(a)(1).  Department of Labor Regulations define the term "employee employed in a bona fide executive capacity" as any employee:

(1)    Compensated on a salary basis at a rate of not less than $455 per week . . .;

(2)    Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3)    Who customarily and regularly directs the work of two or more other employees; and

(4)    Who has the authority to hire and fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

17

29 C.F.R. § 541.100(a). The question of whether Plaintiff falls within the executive employee exemption is a question of law for the Court; the question of how Plaintiff spent his working time, however, is a question of fact. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986).

SPC argues that Plaintiff satisfied each element of the four-part test for the executive exemption and therefore that SPC is entitled to judgment as a matter of law on Plaintiff's overtime claim. (Def.'s Mem., Dkt. [32-1] at 8-22.) Plaintiff contends, on the other hand, that based on the evidence in the summary judgment record, a reasonable jury could find that Plaintiff was not employed in a "bona fide executive capacity." (Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp."), Dkt. [37] at 3, 10-21.) Plaintiff concedes the first part of the four-part test, that Plaintiff was a salaried employee, compensated at a rate not less than $455 per week. (Id. at 3.) Plaintiff argues, however, that the evidence in the record "does not require a finding that [Plaintiff's] primary duty was management, that he 'customarily and regularly' directed the work of two or more employees, and that his recommendations regarding hiring and firing were 'given particular weight.'" (Id. (emphasis in original).) The Court considers these three elements against the evidence in the summary judgment record.

18

### 1.      *Primary Duty is Management*

The Department of Labor Regulations define "management" as

including, but not limited to, activities such as:

> interviewing, selecting, and training of employees; setting and
> adjusting their rates of pay and hours of work; directing the work
> of employees; maintaining production or sales records for use in
> supervision or control; appraising employees' productivity and
> efficiency for the purpose of recommending promotions or other
> changes in status; handling employee complaints and grievances;
> disciplining employees; planning the work; determining the
> techniques to be used; apportioning the work among the
> employees; determining the type of materials, supplies, machinery,
> equipment, or tools to be used or merchandise to be bought,
> stocked, or sold; controlling the flow and distribution of materials
> or merchandise and supplies; providing for the safety and security
> of the employees or the property; planning and controlling the
> budget; and monitoring or implementing legal compliance
> measures.

29 C.F.R. § 541.102.  The term "primary duty" is defined to mean "the

principal, main, major or most important duty that the employee performs."  29

C.F.R. § 541.700(a).

The Regulations provide that "[d]etermination of an employee's primary

duty must be based on all the facts in a particular case, with the major emphasis

on the character of the employee's job as a whole."  29 C.F.R. § 541.700(a).

"Factors to consider when determining the primary duty of an employee

19

include, but are not limited to, the relative importance of the exempt duties as

compared with other types of duties; the amount of time spent performing

exempt work; the employee's relative freedom from direct supervision; and the

relationship between the employee's salary and the wages paid to other

employees for the kind of nonexempt work performed by the employee."  29

C.F.R. § 541.700(a).  The Regulations further provide that the amount of time

an employee spends doing exempt work "can be a useful guide in determining

whether exempt work is the primary duty of an employee":

> Thus, employees who spend more than 50 percent of their time
> performing exempt work will generally satisfy the primary duty
> requirement.  Time alone, however, is not the sole test, and nothing
> in this section requires that exempt employees spend more than 50
> percent of their time performing exempt work.  Employees who do
> not spend more than 50 percent of their time performing exempt
> duties may nonetheless meet the primary duty requirement if the
> other factors support such a conclusion.

29 C.F.R. § 541.700(b).

SPC bears the burden of establishing its executive exemption affirmative

defense.  Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1269 (11th Cir.

2008).  Courts are to "closely circumscribe the FLSA's exemptions," applying

them only "to those clearly and unmistakably within the terms and spirit of the

exemption." Id.  Exemptions to the FLSA's overtime requirement therefore are

narrowly construed.  Id.  Moreover, the Eleventh Circuit Court of Appeals has

rejected a "categorical approach" to deciding whether an employee falls within

the executive exemption.  Id.  The Court has recognized "the necessarily fact-

intensive nature of the primary duty inquiry, that the answer is in the details,

and that where an issue turns on the particular facts and circumstances of a case,

it is not unusual for their to be evidence on both sides of the question, with the

result hanging in the balance."  Id. (internal quotes and citations omitted).

The Court finds that, in this case, factual issues regarding the nature of

Plaintiff's position with SPC preclude it from ruling as a matter of law that

Plaintiff's primary duty was management.  As stated above, factors bearing on

the primary duty inquiry include, but are not limited to:

- the relative importance of the exempt duties as compared with other types of duties;

- the amount of time spent performing exempt work;

- the employee's relative freedom from direct supervision; and

- the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a).  Accepting the facts according to Plaintiff as true, the Court finds that a reasonable jury could conclude that Plaintiff's primary duty was not management.

Plaintiff has presented evidence that he spent between eighty to ninety-five percent of his work time performing manual labor and non-managerial tasks.  Such work included hauling gravel and other materials by dumptruck, operating backhoes and tractors, shoveling dirt, spreading straw, laying sod, and operating the one-hundred-pound CCTV camera.  Moreover, Plaintiff has presented evidence that Massey, not Plaintiff, made all major managerial decisions and that Plaintiff was subject to Massey's direct supervision.

For example, it is undisputed that while Plaintiff worked in the civil department of SPC, Massey was on the same job site as Plaintiff ninety-five percent of the time.  Plaintiff contends that Plaintiff "watched over the job" and supervised employees only in Massey's absence.  Plaintiff also contends that any directions he gave to other employees came directly from Massey and that Massey directed SPC's work on civil job sites; e.g., deciding whether to purchase materials, deciding or approving changes in work orders, and overseeing project billing.  If a problem arose on a civil job site, Plaintiff did

22

not exercise discretion in determining how to resolve it but, rather, called Massey for direction.  Before Massey ever left a job site, he gave Plaintiff and the other employees directions regarding the work they were to perform.

Additionally, it is undisputed that Plaintiff never hired or fired any employee, and Plaintiff contends that he did not even participate in this process. On the contrary, Plaintiff contends that his only role in this regard was answering questions from Massey regarding the performance of particular employees, about whom Massey inquired.  Although SPC contends that Plaintiff was the highest paid employee after Massey and his wife and SPC-co-owner, Lisa Massey, there is no evidence in the record regarding how Plaintiff's salary compared to the compensation paid other non-managerial employees.

In light of this evidence, a reasonable jury could conclude, based on the factors set out above, that Plaintiff's primary duty was not management.  See, e.g., Rodriquez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1265 (11th Cir. 2008) (finding sufficient evidence from which jury reasonably could conclude that store managers' primary duty was not management, where evidence was presented that, e.g., (1) managerial tasks did not constitute majority of managers' work; (2) managers lacked authority and discretion over their

23

respective stores and employees; (3) some store managers could not make management decisions without permission of district manager; and (4) some store managers' hourly rate of pay was comparable to or even less than those of sales associates or assistant managers); Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1269 (11th Cir. 2008) (finding sufficient evidence from which jury reasonably could find that store managers' primary duty was not management, where ample evidence showed (1) store managers spent 80 to 90% of their time performing manual labor; (2) their non-managerial tasks were of equal or greater importance to the store's functioning and success; (3) store managers rarely exercised discretion and (4) had little freedom from direct supervision; and (5) a relatively small difference existed between store managers' and assistant managers' hourly rates).  Accordingly, the Court cannot rule as a matter of law that Plaintiff was subject to the executive exemption of the FLSA.[5]  SPC, therefore, is not entitled to summary judgment on its executive exemption affirmative defense.

---

[5] The Court declines to address the remaining two parts of the executive exemption test (29 C.F.R. § 541.100(a)) in light of SPC's failure to show as a matter of law that Plaintiff's primary duty was management.

24

C.      Measure of Damages

Finally, SPC argues that "if this Court does not dismiss Plaintiff's FLSA

claim in its entirety because Plaintiff is exempt, it should order that Plaintiff's

measure of damages should be half-time his hourly rate of pay, not time-and-a-

half."[6]  (SPC's Mot. for Summ. J., Dkt. [32-1] at 24.)  As stated at the beginning

---

[6] In support of this argument, SPC points to 29 C.F.R. § 778.114(a) and
multiple circuit and district court cases applying this provision to award overtime
compensation on a half-time, rather than time-and-a-half, basis.  Under this provision:

> An employee employed on a salary basis may have hours of work which
> fluctuate from week to week and the salary may be paid him pursuant to
> an understanding with his employer that he will receive such fixed
> amount as straight time pay for whatever hours he is called upon to
> work in a workweek, whether few or many.  Where there is a clear
> mutual understanding of the parties that the fixed salary is compensation
> (apart from overtime premiums) for the hours worked each workweek,
> whatever their number, rather than for working 40 hours or some other
> fixed weekly work period, such a salary arrangement is permitted by the
> Act if the amount of the salary is sufficient to provide compensation to
> the employee at a rate not less than the applicable minimum wage rate
> for every hour worked in those workweeks in which the number of
> hours he works is greatest, and if he receives extra compensation, in
> addition to such salary, for all overtime hours worked at a rate not less
> than one-half his regular rate of pay.  Since the salary in such a situation
> is intended to compensate the employee at straight time rates for
> whatever hours are worked in the workweek, the regular rate of the
> employee will vary from week to week and is determined by dividing
> the number of hours worked in the workweek into the amount of the
> salary to obtain the applicable hourly rate for the week.  Payment for
> overtime hours at one-half such rate in addition to the salary satisfies the
> overtime pay requirement because such hours have already been
> compensated at the straight time regular rate, under the salary

of this Order, Section 7(a)(1) of the FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the <u>regular rate at which he is employed</u>." 29 U.S.C. § 207(a)(1) (emphasis added). "The employee's 'regular rate' of pay is thus the 'keystone' of section 7(a)." <u>Urnikis-Negro v. Am. Family Property Servs.</u>, 616 F.3d 665, 673 (7th Cir. 2010) (quoting <u>Walling v. Youngerman-Reynolds Hardwood Co.</u>, 325 U.S. 419, 424 (1945)). "'On that depends the amount of overtime payments which are necessary to effectuate the statutory purposes. The proper determination of that rate is therefore of prime importance.'" <u>Id.</u> (quoting <u>Walling</u>, 325 U.S. at 424).

The "regular rate" of pay under the Act is the amount of compensation an employee receives per hour. 29 C.F.R. § 778.109. Computation of this rate begins with a determination of the employee's weekly salary. 29 C.F.R. §

───────────────

arrangement.

29 C.F.R. § 778.114(a). (<u>See</u> footnote 10, <u>infra</u>, for a discussion of the applicability of this regulation to the issue before the Court.)

26

778.113.  See also Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 579

(1942), superseded on other grounds by statute as stated in Trans World

Airlines, Inc. v. Thurston, 469 U.S. 111, 128 n.22 (1985) ("It is . . . abundantly

clear from the words of section 7 that the unit of time under that section within

which to distinguish regular from overtime is the week.").  "To produce the

regular hourly rate of pay for purposes of the overtime calculation, the weekly

salary must in turn be divided 'by the number of hours which the salary is

intended to compensate.'"  Urnikis-Negro, 616 F.3d at 673 (emphasis added)

(quoting 29 C.F.R. § 778.113(a)[7]).  An employee's regular rate of pay is a

question of fact.  Id. at 680 (citing Walling, 325 U.S. at 424-25).

       In this case, SPC has failed to present any evidence regarding the number

of hours Plaintiff's salary was intended to compensate, although there is

evidence in the record that Plaintiff regularly worked more than 40 hours per

week.  (Pl.'s SAF, Dkt. [37-7] ¶ 24.)  Was Plaintiff's salary intended to

compensate him for a forty-hour workweek? A fifty-hour workweek? Or for all

_____

       [7] This regulation states, "If the employee is employed solely on a weekly salary
basis, the regular hourly rate of pay, on which time and a half must be paid, is
computed by dividing the salary by the number of hours which the salary is intended
to compensate."  29 C.F.R. § 778.113 (emphasis added).

27

hours worked in a given workweek, regardless of the number?  This issue, in turn, bears on the proper method of calculating the overtime to which Plaintiff would be entitled, if found not exempt.

Following the United States Supreme Court's decision in <u>Missel</u>, 316 U.S. at 580-81 & n.16, courts have held that where an employee's salary is intended to compensate the employee for any and <u>all</u> hours worked in a given workweek, rather than some fixed number of hours, overtime compensation owed to the employee is calculated on a half-time rather than time-and-a-half basis.  The rationale behind this rule has been stated as follows:

> Notably, the approach taken by the Court in <u>Missel</u> treats the fixed weekly wage paid to the employee as compensation at the regular rate for <u>all</u> hours that the employee works in a week, including overtime hours.  The employer will separately owe the employee a premium for the overtime hours, but because he has already been compensated at the regular rate for the overtime hours by means of the fixed wage, the employer will owe him only one-half of the regular rate for those hours rather than time <u>plus</u> one-half.

<u>Urnikis-Negro</u>, 616 F.3d at 675 (emphasis in original).  <u>See also</u> <u>Seymour v. PPG Indus., Inc.</u>, No. 09-1707, 2012 WL 3746194, at *14 (W.D. Pa. Aug. 29, 2012) ("Ultimately, the employee's regular rate of pay is a <u>factual</u> issue . . . which requires a threshold determination whether the salary was intended to

AO 72A
(Rev.8/82)

compensate for a fixed number of hours, or alternatively for all hours worked. If the salary was for a fixed number of hours, the employees are entitled to time-and-a-half for overtime work.[8]  If the salary was for all time worked, the employees are only entitled to the half-time premium, because they have already received payment for straight time on their overtime hours."); Torres v. Bacardi Global Brands Promotions, Inc., 482 F. Supp. 2d 1379, 1381 (S.D. Fla. 2007) ("[A] non-exempt employee who receives a weekly salary for all hours worked has, by definition, already been paid his "regular rate" for all hours worked in the workweek.  Thus, [such] employee is only owed half-time for any hours worked in excess of forty per workweek.").

In accordance with the foregoing, if Plaintiff is found not exempt, and if his salary was intended to compensate him for fluctuating work hours, the overtime premium to which he would be entitled properly would be calculated on a half-time basis.  If, on the other hand, Plaintiff's salary was intended to compensate him for fixed work hours, Plaintiff would be entitled to overtime

---

[8] The Seymour court recognized as follows: "This conclusion assumes the fixed number of hours was forty per week.  If, on the other hand, the salary was actually intended to compensate for fifty hours, the employees would be entitled to half-time for the first ten hours or less of overtime and time-and-a-half for any overtime worked beyond the first ten hours."  2012 WL 3746194, at *14 n.8.

29

compensation on a time-and-a-half basis.[9]  Given the lack of evidence in the

record regarding the number of hours Plaintiff's salary was intended to

compensate, the Court cannot rule as a matter of law that the overtime

compensation, if any, owed Plaintiff should be calculated on a half-time basis.

SPC therefore is not entitled to summary judgment on this issue.[10]

---

[9] As the court in Seymour recognized, this presumes a forty-hour workweek.
See footnote 8, supra.

[10] Some courts have limited damages to the half-time premium discussed above
on the basis of the Department of Labor's "fluctuating workweek" regulation, 29
C.F.R. § 778.114, set out in footnote 6, supra.  See, e.g., Clements v. Serco, Inc., 530
F.3d 1224, 1230-31 (10th Cir. 2008); Valerio v. Putnam Assocs., Inc., 173 F.3d 35,
39-40 (1st Cir. 1999); Blackmon v. Brookshire Grocery Co., 835 F.2d 1135, 1138-39
(5th Cir. 1988) (relying on section 778.114 and affirming award of half-time
damages).  This regulation provides that employers may, consistent with their
obligations under the FLSA, calculate overtime compensation at half the regular rate
"[w]here there is a clear mutual understanding of the parties that the fixed salary is
compensation (apart from overtime premiums) for the hours worked each workweek,
whatever their number, rather than for working 40 hours or some other fixed weekly
work period . . . ."  29 C.F.R. § 778.114(a).

Other courts, however, have rejected this analytical approach, while awarding
damages on a half-time basis, reasoning that section 778.114(a) is not a remedial
provision but, rather, a regulation setting forth one way in which an employer may
compensate a non-exempt employee consistent with the FLSA.  See, e.g., Urnikis-
Negro, 616 F.3d at 666 ("[Section 778.114(a)] sets forth one way in which an
employer may lawfully compensate a non-exempt employee for fluctuating work
hours; it is not a remedial measure that specifies how damages are to be calculated
when a court finds that an employer has breached its statutory obligations."); Torres,
482 F. Supp. 2d at 1381-82 (calculating overtime compensation on half-time basis but
not under analytical framework of section 778.114(a)); Seymour, 2012 WL 3746194,
at *13 ("This court concludes that the best approach is not to conflate the fluctuating

## Conclusion

Based on the foregoing, Defendant Southern Premier Contractors, Inc.'s

Motion for Summary Judgment [32] is **DENIED**.

**SO ORDERED**, this __6th__ day of March, 2013.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

_____

workweek regulation with the damages calculation.").  The Court agrees with the
foregoing authorities that section 778.114(a) does not provide the proper analytical
framework for calculating damages on a half-time basis in the case of a non-exempt
employee compensated at a fixed weekly wage for fluctuating work hours.

31